**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CARRIE E. CARTER,**

      **Plaintiff,**

                        **Case No. 2:18-cv-224**
   **v.**                       **JUDGE JAMES L. GRAHAM**
                        **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Carrie E. Carter, brings this action under 42 U.S.C. § 405(g) for review of a

final decision of the Commissioner of Social Security ("Commissioner") denying her application

for disability insurance benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the

Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 20), and

the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED**

that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED**

under Sentence Four of § 405(g).

## I.    BACKGROUND

On March 21, 2011, Plaintiff filed her first application for disability insurance benefits.

(R. at 14, 89.) Plaintiff's first application was denied initially and upon reconsideration. (*Id*.)

Following a *de novo* video hearing before an administrative law judge ("ALJ") Charles J. Arnold

at which Plaintiff, who was represented by counsel appeared and testified, the ALJ issued a

decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14, 86–100.)  On January 23, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 14.) Plaintiff timely commenced an action in this Court, *Carpenter v. Colvin*, No. 2:14-cv-244, which affirmed the Commissioner's decision and dismissed the action on December 2, 2014.  (R. at 150–52.)[1]

Plaintiff filed her second application (the instant application) for disability insurance benefits on March 7, 2014, alleging disability since October 18, 2010.  (R. at 222–25.) Plaintiff's application denied initially and upon reconsideration.  (R. at 154–62, 164–70.) Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 171–72.)  ALJ Jeannine Lesperance held a hearing on September 15, 2016, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 38–85.)  On February 15, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 14–31.)  On January 16, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–5.) Plaintiff then timely commenced the instant action.

### III.    MEDICAL RECORDS

On June 21, 2014, Karen Terry, Ph.D., a state-agency physician, reviewed Plaintiff's medical record.  (R. at 116–18.)  Dr. Terry opined that Plaintiff was not significantly limited in her abilities to remember locations and work-like procedures and to understand and remember very short and simple instructions, to perform activities within a schedule, maintain regular

---

[1] This earlier-filed action was assigned to District Judge Gregory L. Frost, who has since retired. (*Id.*)

attendance, and to be punctual within customary tolerances, to sustain an ordinary routine without special supervision, and ability to make simple work-related decisions. (R. at 116-17.) Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id*.) However, Plaintiff was markedly limited in her ability to understand and remember detailed instructions. (R. at 116.) Dr. Terry stated that Plaintiff's ability to work in coordination with or in proximity to others without being distracted by them was not ratable on available evidence. (R. at 117.) According to Dr. Terry, Plaintiff exhibited some short-term memory difficulty; her concentration was variable and she "put forth minimal effort on mental status tasks." (*Id*.) Plaintiff could complete simple, routine tasks that do not involve extended periods of sustained attention /concentration or more than daily planning and do not have fast-paced performance or strict production quota requirements and at times may need some assistance when initially performing new tasks. (*Id*.)

As to her social interaction limitations, Dr. Terry found that Plaintiff was not significantly limited in her abilities to interact appropriately with the general public, to ask simple questions or request assistance, and ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id*.) Dr. Terry determined that Plaintiff was moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id*.) According to Dr. Terry, Plaintiff therefore can relate to others on a superficial level but "should not be required to influence others to follow instructions, demands[,] or handle criticism." (*Id*.)

As to her adaptative limitations, Dr. Terry concluded that Plaintiff was not significantly limited in her abilities to travel in unfamiliar places or use public transportation or to set realistic goals or make plans independently of others. (R. at 117–18.) Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. (R. at 117.) There was no evidence Plaintiff was limited in her ability to be aware of normal hazards and take appropriate precautions. (*Id.*) According to Dr. Terry, Plaintiff can complete tasks where there is no more than occasional change; and when change occurs it can be explained in simple terms. (R. at 118.)

On October 29, 2014, Patricia Semmelman, Ph.D., reviewed the medical record upon reconsideration. (R. at 132.) Dr. Semmelman stated as follows: "ALJ ruling was transferred to the Federal Appeals level on 2-14 and on 4-2-14 the case was closed with a disposition issued. The MRFC [mental residual functional capacity] given is an adopt of the ALJ MRFC dated 11/30/12. The MRFC is being adopted under AR 98-4." (*Id.*)

## IV. ADMINISTRATIVE DECISIONS

### A. Decision dated November 30, 2012

On November 30, 2012, ALJ Arnold issued his decision regarding Plaintiff's first application. (R. at 89–100.) ALJ Arnold found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2015. (R. at 91.) At step one of the sequential evaluation process,[2] ALJ Arnold found that Plaintiff had not engaged in substantially gainful activity since October 18, 2010, the alleged onset date. (*Id.*)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

At step two, ALJ Arnold concluded that Plaintiff had the following severe impairments: status post carpal tunnel release surgery of the light hand, lumbar degenerative changes, depression, and anxiety. (R. at 91.)

At step three of the sequential process, ALJ Arnold concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 92.) At step four, ALJ Arnold assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is limited to light and sedentary exertional levels; restricted to use of the 1ight hand to assist or stead objects being held by the left hand, and capable of only low stress work identified as minimal contact with others at the work site with few changes in the work setting.

(R. at 93.)

ALJ Arnold concluded that Plaintiff could not perform any past relevant work. (R. at 96.) However, relying on the VE's testimony, ALJ Arnold determined that there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 97–

---

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

99.)  He therefore concluded that Plaintiff was not under a disability, as defined in the Social

Security Act, through the date of the decision (November 30, 2012).  (R. at 99.)

**B.      Decision Dated February 15, 2017**

On February 15, 2017, ALJ Lesperance issued her decision regarding Plaintiff's present

application.  (R. at 14–31.)  ALJ Lesperance found that Plaintiff last met the insured status

requirements of the Social Security Act on December 13, 2015.  (R. at 16.)  At step one of the

sequential evaluation process, ALJ Lesperance found that Plaintiff had not engaged in

substantially gainful activity during the period from her alleged onset date of December 1, 2012

(the date after ALJ Arnold's decision) through her date last insured of December 31, 2015.  (*Id*.)

At step two, ALJ Lesperance concluded that Plaintiff had the following severe

impairments through the date last insured: carpal tunnel syndrome, bilateral; obesity;

degenerative disc disease of the lumbar spine; affective disorder; anxiety disorder.  (*Id*.)

At step three of the sequential process, ALJ Lesperance concluded that that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled one of the

listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 21.)  At step

four, ALJ Lesperance assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that, through the date last
> insured, the claimant had the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) except that she could frequently handle and finger
> bilaterally; occasionally stoop, crouch, climb ramps/stairs, and push/pull bilaterally
> with the upper extremities; and never kneel, crawl, or climb
> ladders/ropes/scaffolds.  Additionally, the claimant was able to perform simple and
> moderately complex but routine tasks at an average pace.  She could not perform
> jobs with strict time or production demands but could interact occasionally with
> others.  She was able to adapt to occasional new tasks that were explained and
> demonstrated.

(R. at 23.)  In reaching this determination, ALJ Lesperance accorded "little weight" to the state

agency psychologists and Michael B. Shannon, M.D., plaintiff's treating neurosurgeon.  (R. at

25.)

Relying on the VE's testimony, ALJ Lesperance determined that, through the date last

insured, there were jobs that existed in significant numbers in the national economy that Plaintiff

could have performed.  (R. at 29–30.)  She therefore concluded that Plaintiff was not under a

disability, as defined in the Social Security Act, at any time from October 18, 2010, the alleged

onset date, through December 31, 2015, the date last insured.  (R. at 30.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746

(6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff advances two contentions of error.  Plaintiff first asserts that ALJ Lesperance

failed to properly evaluate the opinions of Dr. Shannon.  Plaintiff next contends that ALJ

Lesperance's decision should be reversed because she mischaracterized Dr. Terry's opinions

and, therefore, failed to address these opinions.  For the reasons that follow, the undersigned

agrees that ALJ Lesperance erred by failing to address Dr. Terry's opinions and this failure was

not harmless error. [3]

The ALJ must consider all medical opinions that he or she receives in evaluating a

claimant's case.  20 C.F.R. § 416.927(c); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2,

1996) ("The RFC assessment must always consider and address medical source opinions.").

The applicable regulations define medical opinions as "statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature and

severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

---

[3] This finding obviates the need for in-depth analysis of Plaintiff's arguments regarding ALJ's
Lesperance's evaluation of Dr. Shannon, Plaintiff's treating neurosurgeon.  The Court, however,
encourages the Commissioner to address this contention if the Court ultimately remands the case.

still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Although the ALJ must provide "good reasons" when assigning weight to a treating physician, "this explanatory requirement does not apply to opinions from physicians who" have not treated the claimant. *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). However, "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Id.* (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The regulations provide that the ALJ, regardless of a medical opinion's source, will evaluate the opinion based on the following factors: whether there was an examining relationship, whether the opinion was made by a treating source, the length of the treating relationship, the supportability of the opinion's conclusions, the consistency of the opinion with the record as a whole, any specialization of the opinion source, and other factors raised by Plaintiff. 20 C.F.R. § 404.1527(c). The ALJ may give the opinions of non-examining state agency doctors weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 (July 2, 1996). The ALJ is specifically directed to consider whether the State agency doctors' opinions are supported by "evidence received at the administrative law judge . . . level[ ] that was not before the state agency." (*Id.*)

Here, ALJ Lesperance gave little weight to the state agency psychologists because they "adopted the mental limitations" articulated by ALJ Arnold. (R. at 25.) The Commissioner admits that ALJ Lesperance mischaracterized Dr. Terry's opinion, conceding that Dr. Terry reviewed the record at the initial level in June 2014, and found that Plaintiff had several functional limitations arising from her mental impairments. (ECF No. 19 at 8.) This

mischaracterization resulted in a failure to consider any of the limitations identified by Dr. Terry.
(R. at 25, 116–18.)

The Commissioner nevertheless contends that any error in evaluating Dr. Terry's opinion is harmless because ALJ Lesperance indirectly addressed the opinion through her analysis and her RFC essentially incorporates Dr. Terry's opined limitations. (ECF No. 19 at 8–11.) It is true that a failure to address a medical opinion is harmless where, *inter alia*, the ALJ made findings consistent with the opinion or incorporates such limitations in the RFC or met procedural safeguards as to the supportability of the opinion by indirectly attacking it through the analysis of other opinions. *Cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Here, however, ALJ Lesperance's decision did neither. (R. at 14–31.) Notably, Dr. Terry opined that Plaintiff "[c]an relate to others on a superficial level" but she "should not be required to influence others to follow instructions, demands or handle criticism." (R. at 117.) The Commissioner contends that "it is not clear" that Dr. Terry's opinion that Plaintiff could have only "superficial" contact with others is "materially different" than the ALJ's RFC limiting Plaintiff to occasional interaction with others. (ECF No. 19 at 9 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (concluding that a RFC that limited the claimant to "only occasional interaction with the public" accounted for the state agency psychologists' limitation that the claimant is "able to relate to a few familiar others on a superficial basis").) *Reeves*, however, is distinguishable because it does not provide any more detail regarding the limitation of interacting on a "superficial basis" or what the state agency psychologists meant by this limitation. *See Reeves*, 618 F. App'x at 275. In contrast, here, Dr. Terry specifically explained that "superficial" contact meant the quality of the contact, *i.e.*, not requiring Plaintiff "to influence others to follow instructions, demands or handle criticism[,]"

10

rather than the quantity of the contact, *i.e.*, occasional. (R. at 25, 117.) Based on this record, the

undersigned cannot conclude that ALJ Lesperance's evaluation of Dr. Terry's opinion and

subsequent determination of Plaintiff's RFC is harmless because it is not consistent with and

does not incorporate Dr. Terry's limitation of "superficial" contact. *Id.*; *cf. Cooper v. Comm'r of

Soc. Sec.*, No. 2:18-cv-67, 2018 WL 6287996, at *4 (S.D. Ohio Dec. 3, 2018) (concluding that

"[t]he terms 'occasional' and 'superficial' are not interchangeable, collecting cases, and

distinguishing *Reeves*), *report and recommendation adopted by* 2019 WL 95496 (S.D. Ohio Jan.

3, 2019); *Woods v. Comm'r of Soc. Sec.*, No. 3:18-cv-76, 2019 WL 114591, at *3 (S.D. Ohio

Apr. 16, 2019) (finding that "'occasional" and "superficial" are not coterminous" and collecting

cases), *report and recommendation adopted by* 2019 WL 1958663 (S.D. Ohio May 2, 2019);

*Kreze v. Berryhill*, No. 1:17-cv-1254, 2018 WL 3045097, at *7 (N.D. Ohio June 7, 2018)

(distinguishing *Reeves* where, *inter alia*, counsel and the vocational expert construed the word

"occasional" as a term of art), *report and recommendation adopted by* 2018 WL 3046474 (N.D.

Ohio June 20, 2018).

　　　　While the Commissioner goes on to contend that ALJ Lesperance reasonably explained

why she included the social limitation of "occasional" interaction, this argument does not address

the omission of Dr. Terry's limitation of "superficial" interaction. (ECF No. 19 at 9–11; *see also*

R. at 14–31.) ALJ Lesperance's failure to address Dr. Terry's opinion in any way is therefore

not harmless and leaves the undersigned unable to trace her path of reasoning, requiring remand.

*See Stacey*, 451 F. App'x at 519; *Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7–

9 (N.D. Ohio Mar. 25, 2019) (remanding where the ALJ did not explain why the superficial

contact restriction was omitted); *cf. Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th

Cir. 2014) (stating that "this Court shall not accept appellate counsel's *post hoc* rationalization

for agency action in lieu of [accurate] reasons and findings enunciated by the Board") (internal quotation marks and citations omitted) (brackets in original).

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).

      **IT IS SO ORDERED.**


Date:  August 2, 2019                                      s/ *Elizabeth A. Preston Deavers*_____
                                               ELIZABETH A. PRESTON DEAVERS
                                               CHIEF UNITED STATES MAGISTRATE JUDGE